We see that you're appointed under the Criminal Justice Act, and we appreciate your taking that. Go ahead. My name is Robert Irving, and I represent the defendant in this case, Kwame Askia. As a preliminary matter, I would ask this Court for a de novo review of the statute of limitations based on United States v. Bennett, a decision I believe you authored in 2014. In that case, as is here, there was a pretrial motion to dismiss the indictment based on the statute of limitations. The Court then agreed to review the statute of limitations and the dismissal by the District Court of the indictment de novo. And with that, I'll proceed. In this case, we had a grant awarded to Mr. Askia in the amount of $149,280. That was deposited into a Wells Fargo account on August 30th. Then, on August 19th, which was really overlooked very much throughout these proceedings, was that he deposited $69,000 into that same Wells Fargo account of his own legitimate funds. So there was a commingling. And as the government's expert witness, forensic accountant Cheryl Shuffield, testified at trial that once that commingling occurred with the deposit of the $69,000, there could not be a way of discerning which funds were withdrawn from the personal monies and which funds were withdrawn from the grant funds. However, we can get a glimpse into that. Also at trial, there was the testimony of Ms. Mallory, who testified that at the end, as far as the record goes in terms of record keeping of the students who attended the program, that ended on March the 6th. There were two students in attendance on that date, and she cleaned the office, and the program ended. Now, as of, I guess thirdly, I'd like to add that it needs to be remembered that Mr. Askia's mother died on February 28th, 2008. And so that does play a role. What was not done? Let me ask you a question. Let's say we agree with you that this was not a continuing offense. I'm so sorry? If we were to agree with you that this is not a continuing offense, there would be a statute of limitations issue, right? I'm very sorry, Your Honors. I tried to put my aids in this morning with new batteries, and I've only got one working. So I'm really struggling. Well, I'll do my best. Let's say that we were to agree with you that this is not a continuing offense, right? Not a... Continuing offense? No, I don't think it makes any difference. Whether it's continuing or non-continuing is not the argument. The argument is that the money as of January 8th, or approximately on or about January 8th, there was $150,000 expended out of that commingled account. As of March 4th, we had $183,000 expended out of that joint account. Now, the indictment was filed on March 6th, 2013. So the cutoff date for the ambit of the statute of limitations would have been March 5th of 2008. All of the... The school had closed on March 6th. There was no money to be spent, and we had personal funds of Mr. Esquia commingled with the grant funds. But again, with the closing of the program on March 6th, with the last student attending, and that's in one of the exhibits, and that trail, exhibit number 76, there was no more to be spent on this program by Mr. Esquia. It was... Everything had been acquired, purchased, whether authorized or unauthorized. The computers had been purchased, which did exist. The snacks had been purchased. There were other expenditures. Teachers had... The teachers who tutored the students had been paid. I don't want to get into the argument of which funds were disallowed or not allowed. I think Ms. Shuffield, in her final summary on the last page of her very detailed and thorough accounting, goes into what she considered being as generous as she could as to what funds were... could be and should be allocated to the program at Strong Arkansas. But the point I'm trying to make is that by the 4th of March, prior to the ambit of the statute of limitations, there was $183,000. The second point is that by March 6th, there was no reason to spend any more money on this program. And everything else that you see... I mean, what happened was that nobody really took heart. Like this accounting by Ms. Shuffield was not available when the court considered Mr. Esquia's motion to dismiss the indictment based on the statute of limitations. The $69,000 in personal funds simply was totally overlooked. All I can add is that as of March 6th, there was no monies to go to the program. There was no program. I can't and I won't piecemeal through or look at each expenditure that Ms. Shuffield detailed in the first 12, 13 pages of her 61-page report. But looking at those and understanding that Mr. Esquia's mother had passed in California but was in turn buried in Mount Holly, Arkansas, just a few miles from Strong where the program took place. So if you look at the record, it's difficult to see how it is that the monies after March 6th would have been coming out of grant funds. They were clearly part of the $69,000. And there may have been... I mean, you have a mixed account. There's no way of knowing when a check is written where that is coming from when you have commingled those funds. And that's the problem we face. Well, I'll try to keep my voice up, but... I appreciate that. Was this argument made at the district court? No, Your Honor. These funds were commingled and therefore the government couldn't prove whether funds came out of his money or the grant money? No. In the hearing held on the statute of limitations, the $69,000 of personal funds was never considered, never factored in to that ruling. It was really only at trial when Ms. Shuffield testified and called clear attention to what had happened, that we had commingled funds, good funds with grant funds, that at that point is the only time the court became aware of that finding. And that was unfortunate. And basically that's the sum of my argument. There are many arguments positive in this case. I'm not going to waste this court's time. I'm going forward with what I think is a reasonable argument, that the statute of limitations argument needs to be reviewed de novo by this court. And I think my time is about up. Thank you. Good morning, Mr. Webb. Good morning, Your Honor. Your Honor, may it please the court, I'm an assistant United States attorney in the Western District of Arkansas, and I was one of the attorneys that tried this case. Mr. Irvin talks about the own, I believe that the check for $49,280 was deposited into the Askia Learning Center account number 122 on August the 30th of 2007. Subsequently, on September the 9th, Mr. Askia drew out over $45,000 the first day that he was allowed to do that. Now, that continued. As you see, the court looks at Government Exhibit 74, which was Ms. Sheffield's accounting of this entire thing. As Mr. Irvin said, there are from 3 to 12 are the number of transactions. There's over 500 transactions that occurred with this. And the number of deposits, if you start looking down at those, there were none in September that really qualified because the program didn't actually start until October the 9th of 2007. Now, as he said, it was October the 19th is when this $69,000 came from the strong public school from another program that the defendant had apparently been involved with the year before it was deposited into it. As Ms. Sheffield says, at that point, it became impossible to determine exactly what had became from the program that we're concerned with, the 21st Century Program and the prior funds. And at that point, we have the commingling. As she stated, at that point, what she did was go through, analyze each transaction, and determine what could be done based on the budget that was there. Mr. Webb, can we talk a little bit about the continuing offense? Yes. Where there's 666 as a continuing offense. Right. We've not decided that question, right? That's correct. And the district court looked to 641, a different section. That's correct. In getting there. Are you familiar with the Seventh Circuit case of Yasher? I am, Your Honor. Tell me what's wrong with the analysis the Seventh Circuit did in Yasher. Your Honor, I think that they relied on, they said it shouldn't be considered because it was... Well, they said it shouldn't be a continuing offense. Right. That's correct. And there was, the concern was that in that situation, with those things that occurred, let's see, he was taking, there's several of these cases. I'm sorry, I can't remember. But there was a pattern that was taken at that point in time. They determined that was not a continuing offense. But we also look at the other circuits that have made, not on 666, but have made a determination with a continuing course of conduct. And the Fourth Circuit... I mean, the Supreme Court, I think it's 2C, says that it has to either be Congress saying it or it has to be awfully clear. Right. I'm not sure what makes it awfully clear. I have to say the Seventh Circuit's analysis looked pretty reasonable to me. I understand. Your Honor, I think that, you know, one thing Justice White said in the dissent, that one of the offenses that has been evident as a continuing offense is embezzlement. And, of course, that's what we have here in this case. Counsel, was there, I'm sorry, was there sufficient conduct within the applicable statute of limitations period such that we don't need to reach the issue of whether it's a continuing offense? Yes. In fact, as I state... Okay, there is sufficient evidence that was within the limitations period, but the case was tried using the entire period. Yes. So where does that leave us? If we were to agree with the Seventh Circuit and find that it's not a continuing offense, yet there was sufficient expenditures or embezzlement within the statute, where does that leave us? Does it have to go back, or is there some case that says we can affirm that? Your Honor, you know, the... Because I looked and I couldn't find anything, so I could use some help there. Well, you know, I couldn't either that specifically said that. But, you know, Yeser, Sunni, which was out of the D.C. Circuit. Yeser sent it back, right? Because there was no evidence with regard to something that had... They did not have a trial. I think this was in... It was a pretrial decision. We have a trial where we see what was done. Mrs. Sheffield's testimony and her analysis show that there was... There were 73 transactions that occurred after the date of March the 6th. And they meet the dollar requirements of the statute? Excuse me, Your Honor. Do they meet the dollar requirements of the statute? Yes, Your Honor. It would... Those amount to, I believe... Excuse me. I had to go back and I added it up. I believe it would be $16,000, a little over $16,000 for those 73 transactions. As I stated in my brief, just pointing out what occurred in March the 9th and 10th with regard to the transactions that occurred with both the Super 8 Motel in Smackover, Arkansas, the liquor store, and the purchase of apparently a tombstone and casket during that period of time was approximately $7,000. The magistrate determined that when they were looking at this very issue before we... After the hearing that we had in November, determined that it was a continuing... There would be enough after that date that was within the statute of limitations. I believe his was a little over $5,500, which the court, after reviewing the record, the district court affirmed that, saying the same thing. What there was actually, when I went back in preparing for this, is over $16,000 that was expended by Mr. Esquia after that March 6th of 2008 date. As Mr. Irwin said, if the program ended on March the 6th of 2008, why was he continuing to spend stuff on... He should have returned the money at that point in time. So we have that. Does the court have any other questions with regard to continuing offense? One thing in doing this, I noticed that a number of the cases that I saw were... And I think that when it's a continuing course of conduct and it's a long term such as we have in this case, which it started on the first day he withdrew and continued even into April, we see that there's... He never quit. It was, as Ms. Shepard said, it's approximately $45,000 is all that was actually attributed to the program. So from that aspect, it's a sad situation that the students of the strong school district did not receive any better after school program. Well, Yasser said that if there was $5,000 before the statute of limitations ran, you're barred by the statute regardless of how much was expended after the statute, within the statutory period. And I'm not sure I agree with that, but it seems like... I assume your position would be even if it's not a continuing offense, as long as there's $5,000 within the limitations period, you're okay, right? Right. Your Honor, the Gonzales case, Yasser did determine one thing. They said it was complete at the time of that first offense. Gonzales, which was with the Eighth Circuit, has said that it's at the end of the course of conduct. And, of course, I think that's one of the distinguishing factors between kind of what the Eighth Circuit has said in other instances, and also there's other cases that the court has ruled on a continuing offense that don't relate specifically to 641 or 666 that say that. It's when the course of conduct ends. Let me ask you this. With respect to that which clearly occurred within the statute of limitations, can we really tell whether the jury found that those transactions reached the, you know, the particular transactions reached the total? Or given the way it was presented, do we know whether the jury found ones that were outside the statute of limitations? Your Honor, you know, it's hard to know what the jury always does. There was no request for any specific, you know, specific verdict forms. It was a general form in that respect. So, no. I'm reminded of what the judge I worked for many years ago used to say, you never know who a woman will marry, when a mule will kick her, what a jury will do. And, you know, that's kind of . . . I kind of think of that in this respect. It's hard to know without asking specifically, requesting. Mr. Skia did not request anything of that nature. But the jury was required to find more than 5,000 was expended. That's correct, Your Honor. That's an element of the offense. Right. But there was no time limit put on that. Right. In my closing argument, I did point out the $5,000 that . . . that over $5,000 did occur after that date. But, you know, in Ms. Shuffield's testimony, I mean, that she had, obviously, in the Exhibit 74, specifically, with . . . I believe . . . I don't have the specific page now. I can't . . . But on those dates, it specifically shows how much was expended after those dates, which they looked through and had the presence, and she did talk about. Does the Court have any other questions that they would like to inquire of me? If not, thank you for your time, Your Honor. Thank you. Thank you. Mr. Webb has, again, repeated the same error that was committed in the hearing in November with regard to the statute of limitations. The additional $5,000 within the statute of limitations period, is that personal funds drawn out of the $69,000 that he had deposited into that same account? Or was it grant funds? The only thing I could point to is that there was nothing to spend out of the grant funds because the program had closed down on March the 6th. That was the last date that students attended. And if you look at the actual expenditures, as outlined by Ms. Sheffield, you'll find that they're clearly not related to any educational program. And if you go further through the record, most of them were in California or Arkansas, at smack over, liquor. This is where the family gathered to bury their mother. I can't say that, you know, I mean, again, I have to admit that, and concur with Ms. Sheffield's statement, that once the funds were commingled, it becomes almost impossible to determine which funds were allocated to grant funds and which funds were allocated to personal funds or expenditures were allocated to personal funds. But again, I remind the court that on March 6th, everything was over. As I look through Ms. Sheffield's expenditures, nothing strikes me as grant related. They all, and this was not argued below, but just going through and looking at the actual expenditures, a casket or two expenditures for a casket, a stay at smack over Arkansas for all the family members. Smack over is very close to Mount Holly, Arkansas, where she was interred. And so I urge this court to take a hard look at that additional $69,000, which didn't come forward with any clarity at the hearing, or didn't come forward at all at the hearing, and came forward only with the testimony of Ms. Sheffield at trial. That makes the issue difficult. The only way we can kind of get a glimpse of that is that the program shut down on March 6th. Everything that had been purchased or would be purchased for the program had already been done, whether authorized or unauthorized. We're talking about the statute of limitations. And that statute, the amicus statute, which I'm sorry, I don't know whether it's the 6th or the 5th, if Rule 6 of the Federal Rules of Civil Procedure govern the day plus one, and I don't know the answer to that. But in either event, by March 5th, there was over $183,000 taken out of that account, more than the grant funds, certainly including a portion or all of the $69,000. And there was $14,000 left in the account at the end of April. Again, just a quick look at the first 13 pages of Ms. Sheffield's report. Now, as to, I haven't got time to get into it, but just to point out that this Court has not ruled on whether 666, 18 U.S.C. 666, is continuing or not continuing. Most of the courts have analogized from 641 to say, yes, that's continuing. What this Court did below was analogize again to 641 to say that 666 must also be continuing. Your time's up. Thank you. Time's up. Thank you. Appreciate your arguments today and briefing. Case will be submitted and decided in due course.